
03/21/2013

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **LARRY G. McCLENDON** | § | Case No. 11-41527 |
| xxx-xx-5037 | § | |
| | § | |
| Debtor | § | Chapter 11 |

| | | |
|---|---|---|
| BOBBY J. SPRINGFIELD | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 11-4152 |
| | § | |
| LARRY G. McCLENDON | § | |
| | § | |
| Defendant | § | |

## **FINDINGS OF FACT AND CONCLUSIONS OF LAW**[1]

Upon trial of the complaint in the above-referenced adversary proceeding, the

Court issues the following findings of fact and conclusions of law pursuant to Fed. R.

Civ. P. 52, as incorporated into adversary proceedings in bankruptcy cases by Fed. R.

Bankr. P. 7052.

### *FINDINGS OF FACT*

1.  The complaint seeks a determination of the dischargeability of the debt owing by the Debtor-Defendant, Larry G. McClendon ("McClendon"), to the Plaintiff, Bobby J. Springfield ("Springfield").

---

[1] These findings of fact and conclusions of law are not designated for publication and shall not be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or as to other applicable evidentiary doctrines.

2. At all times relevant to this dispute, McClendon was the president and sole shareholder of NIA Insurance Agency, Inc. and NIA Asset Protection Group, Inc. (collectively, "NIA").

3. Springfield served as Chief Financial Officer for NIA Insurance from 2003 through December 2007.

4. In December 2007, McClendon accused Springfield of theft and, as president of NIA Insurance, terminated Plaintiff's employment.

5. On January 8, 2008, NIA, at the direction of McClendon, sued Springfield for theft and conversion in a lawsuit brought before the 162nd Judicial District Court of Dallas County, Texas (the "State Court Litigation").

6. Springfield filed a counterclaim against NIA and a third party petition against McClendon in his individual capacity.

7. The state court trial between Springfield and McClendon began on March 7, 2011, and concluded on March 16, 2011. The state court conducted a full evidentiary trial with consideration of all evidence in favor of Springfield as well as the evidence supporting the claims and defenses of McClendon.

8. On March 16, 2011, the jury rendered certain factual findings in the State Court Litigation. The jury found that:

   (a) Springfield complied with his fiduciary duty to NIA;[2]

   (b) Springfield did not commit a theft of NIA property;[3]

   (c) McClendon published statements to Allen Van Wey (a third party) in late December 2007 or early January 2008 that Plaintiff had stolen hundreds of thousands of dollars;[4]

---

[2] Ex. B at question 1.

[3] *Id*. at question 6.

[4] *Id*. at question 8(a).

(d)  McClendon published a statement to Allen Van Wey (a third party) in late December 2007 or early January 2008 that Plaintiff had "broke into" the NIA building at 4 a.m. to try and "cover his tracks";[5]

(e)  McClendon published a statement to Annette Dahlke, an employee of Golden Rule Insurance Co., on February 15, 2008 that Plaintiff had stolen money and he asked Ms. Dahlke what he could do to prevent Plaintiff's potential appointment as an agent with Golden Rule;[6]

(f)  McClendon published a statement to Daniel Khamir on or about April 23, 2008 that Plaintiff was a thief who stole $100,000 from him and broke into his building;[7]

(g)  McClendon published statements in a letter dated July 16, 2009 that Plaintiff engaged in wrongful conduct and that McClendon was "devastated and completely shocked that a long-time trusted employee would and could have treated our company so callously all for his own benefit";[8]

(h)  McClendon published statements to James Bennett after December 2007 that Plaintiff stole over a million dollars from NIA;[9]

(i)  McClendon published a statement to the staff at NIA that Plaintiff stole over one million dollars from NIA;[10]

(j)  McClendon published statements to representatives of Frost Bank that Plaintiff engaged in inappropriate behavior, including stealing $400,000;[11]

---

[5] *Id*. at question 8(b).

[6] *Id*. at question 8(c).

[7] *Id*. at question 8(f).

[8] *Id*. at question 8(g).

[9] *Id*. at question 8(h).

[10] *Id.* at question 8(i).

[11] *Id.* at question 8(j).

    (k)    the statements made to the designated third parties regarding Springfield by McClendon were "defamatory per se;"[12]

    (l)    the publication of those statements regarding Springfield by McClendon were "made in good faith; concerned a subject matter that was of sufficient interest to Larry McClendon or was in reference to a duty owed by McClendon; and were communicated to another party having a corresponding interest or duty;"[13]

    (m)    by clear and convincing evidence, McClendon knew that a majority of his statements regarding Springfield were false or that he made the statements "with a high degree of awareness that [the statements were] probably false, to an extent that Larry McClendon in fact had serious doubts as to the truth of the statement[s];"[14]

    (n)    Springfield is entitled to recover from McClendon actual damages in the amount of $341,000.00.

9. Prior to the formal entry of judgment, McClendon filed his voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code on May 11, 2011.

10. On May 13, 2011, Springfield requested relief from the automatic stay to allow the state court to issue a judgment on the jury verdict.[15]

11. On June 20, 2011, this Court entered an "Agreed Order on Motion for Relief from Automatic Stay" to allow the State Court Litigation to proceed to a final determination of liability, including all appellate processes.[16]

---

[12] *Id.* at question 10. Under the charge of the Court, a statement is defamatory per se "if a statement unambiguously and falsely imputed criminal conduct to Bobby Springfield."

[13] *Id.* at question 11.  This submission relates to the existence of a qualified privilege.

[14] *Id.* at question 12.  The jury found that McClendon did not have such knowledge or awareness with regard to the statements listed herein as 8(d) and 8(g).

[15] See docket in case no. 11-41527 (dkt #7).

[16] *Id*. at dkt. 31.

12. Springfield timely filed its Complaint Objecting to the Discharge of a Debt on August 16, 2011, seeking to except its claim arising from the Judgment from the scope of any discharge ultimately granted to McClendon upon completion of his Chapter 11 plan payments.

13. Based upon the jury verdict, the 162nd Judicial District Court entered judgment on November 11, 2011:

    (a) that the NIA Entities take nothing against Springfield for the alleged breaches of fiduciary duty and the alleged violations of the Texas Theft Liability Act; and

    (b) in favor of Springfield and against McClendon on his third party defamation claims in the amount of $341,000.00, with pre-judgment interest at 5% from January 8, 2008 to the date preceding judgment, court costs, and with post-judgment interest thereon at the rate of 5% per annum (the "Judgment").[17]

14. The issues as determined by the jury in the State Court Litigation were essential to the Judgment issued in that action.

15. All of the issues as determined by the jury in the State Court Litigation were fully and fairly litigated in the State Court Litigation.

16. The parties in this adversary case are identical to those in the State Court Litigation.

17. Thus, Springfield is a creditor of the Defendant-Debtor, McClendon, by virtue of the Judgment.

18. On January 30, 2012, McClendon confirmed a Chapter 11 plan of reorganization.[18]

19. On May 22, 2012, an order was entered in McClendon's Chapter 11 case that allowed the proof of claim filed by Springfield in the unsecured amount of $341,000. The Order, which governs only distributions pursuant to the confirmed plan, specified that it had no effect upon the parties' respective claims and

---

[17] Ex. 1.

[18] Ex. M.

defenses regarding non-dischargeability as asserted in this adversary proceeding.[19]

20. Springfield contends that McClendon is precluded from challenging the legitimacy of its claim arising from the Judgment through the principles of collateral estoppel and that its claim is non-dischargeable as a willful and malicious injury under 11 U.S.C. §523(a)(6).

21. The vast majority of the factual and/or legal issues raised by McClendon in his defense before this Court was, or should have been, presented in the State Court Litigation for determination and constitute an impermissible collateral attack upon the determinations arising from the State Court Litigation. These include, but are not limited to:

   (a)   whether Springfield engaged in theft from NIA through receipt of compensation to which he was not entitled;

   (b)   whether Springfield engaged in any activity constituting a breach of fiduciary duty to NIA;

   (c)   whether Springfield could have actually incurred injury as a result of McClendon's statements;

   (d)   whether McClendon knew that his statements regarding Springfield were false or, alternatively, whether he had serious doubts regarding the truth of such statements;

   (e)   whether Springfield was entitled to a recovery of $341,000, plus pre-judgment interest at 5% per annum from January 23, 2008 to November 10, 2011 and costs, plus post-judgment interest on all such sums at 5% per annum.

22. Under the circumstances presented in this case, the false statements made by McClendon to the designated third parties regarding Springfield created an objective substantial certainty of harm to Springfield.

23. McClendon intentionally made the false statements to the designated third parties regarding Springfield in a manner and under circumstances substantially certain to cause injury to Springfield.

---

[19] See docket in case no. 11-41527 (dkt #155).

24. McClendon's testimony that his publication of the false statements about Springfield to the designated third parties could not have caused injury to Springfield was not credible.[20]

25. McClendon's testimony that he had no intention to injure Springfield by his publication of the false statements about Springfield to the designated third parties was not credible.

26. Springfield has demonstrated by a preponderance of the evidence the existence of a deliberate or intentional injury inflicted upon him by McClendon.

27. To the extent any of these findings of fact constitute conclusions of law, the Court expressly adopts them as such.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction to consider the adversary complaint in this proceeding pursuant to 28 U.S.C. §§1334 and §157.

2. This Court has authority to enter a final judgment in this adversary proceeding since it statutorily constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(I) and (O) and meets all constitutional standards for the proper exercise of full judicial power by this Court.

3. In an action to determine the dischargeability of a debt, the creditor has the burden of proof under a preponderance of the evidence standard. *Grogan v. Garner*, 498 U.S. 279, 286 (1991).

4. "Intertwined with this burden is the basic principle of bankruptcy that exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start." *FNFS, Ltd. v. Harwood (In re Harwood)*, 637 F.3d 615, 619 (5th Cir. 2011) (citing *Hudson v. Raggio & Raggio, Inc. (In re Hudson))*, 107 F.3d 355, 356 (5th Cir. 1997).

---

[20] Indeed, to the degree that the jury found the statements were defamatory, regardless of any subsequent characterization of the statements as defamatory per se, McClendon's testimony that Springfield could not have been injured by his publication of false statements to the designated third parties seeks a re-litigation of the facts determined by jury verdict and is precluded under the principles of collateral estoppel.

-7-

5. The fact that there is a debt owing by McClendon to Springfield is established through the factual findings and judgment issued in the State Court Litigation. However, this Court retains exclusive jurisdiction to determine whether that debt is dischargeable. *Grogan v. Garner*, 498 U.S. 279, 285, n.11, (1991); *Fielder v. King (Matter of King),* 103 F.3d 17, 19 (5th Cir. 1997).

*Collateral Estoppel*

6. "Collateral Estoppel or, in modern usage, issue preclusion, 'means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" *Schiro v. Farley*, 510 U.S. 222, 232 (1994) (internal quotations omitted).

7. In other words, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. U. S*., 440 U.S. 147, 153 (1979) (*citing Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5 (1979)).

8. "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Id.* at 153-54.

9. In the bankruptcy dischargeability context,

> Issue preclusion will prevent a bankruptcy court from determining dischargeability issues for itself only if 'the first court has made specific, subordinate, factual findings on the identical dischargeability issue in question . . . and the facts supporting the court's findings are discernible from that court's record.

*Fielder v. King (Matter of King),* 103 F.3d 17, 19 (5th Cir. 1997) *(citing Dennis v. Dennis (Matter of Dennis),* 25 F.3d 274, 278 (5th Cir. 1994)).

10. Thus, while the doctrine of issue preclusion applies in bankruptcy dischargeability litigation, a bankruptcy court retains exclusive jurisdiction to determine whether a debt is dischargeable. *Grogan v. Garner*, 498 U.S. 279, 284 n. 11 (1991).

11. When an issue that forms the basis for the creditor's theory of non-dischargeability has been actually litigated in a prior proceeding, neither the creditor nor the debtor may relitigate those grounds. *RecoverEdge, L.P. v. Pentecost,* 44 F.3d 1284, 1294 (5th Cir. 1995).

12. As the party asserting the preclusive effect of the findings arising from the State Court Litigation, Springfield has the burden of proof on all elements of collateral estoppel.

13. The inquiry into the preclusive effect of a state court judgment is guided by the full faith and credit statute, which states that "judicial proceedings . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." 28 U.S.C. §1738 (1994).

14. Thus, federal courts look to the principles of issue preclusion utilized by the forum state in which the prior judgment was entered. *Schwager v. Fallas (In re Schwager)*, 121 F.3d 177, 181 (5th Cir. 1997).

15. Because the judgment against McClendon was entered in a Texas state court, this Court applies the Texas law of issue preclusion. *Pancake v. Reliance Ins. Co. (In re Pancake)*, 106 F.3d 1242, 1244 (5th Cir. 1997); *Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195 (5th Cir. 1996).

16. Under Texas law, a party is collaterally estopped from raising an issue when: (1) the facts sought to be litigated in the second case were fully and fairly litigated in the first; (2) those facts were essential to the prior judgment; and (3) the parties were cast as adversaries in the first case. *Bonniwell v. Beech Aircraft Corp*., 663 S.W.2d 816, 818 (Tex. 1984), *Cannon v. Texas Independent Bank*, 1 S.W.3d 218, 224 (Tex. App. – Texarkana 1999, pet. denied).

17. The decision was rendered on the merits by the 162nd Judicial District Court and is now a final judgment. There is no pending appeal of the Judgment.[21]

---

[21] Though undocumented, there is apparently a bill of review that has been filed by McClendon. A bill of review is an independent, equitable action brought by a party to a former action seeking to set aside a judgment no longer appealable or subject to motion for new trial. To succeed by bill of review, the petitioner must ordinarily establish three elements: (a) a meritorious claim or defense; (b) that he was prevented from asserting by the fraud, accident, or wrongful act of his opponent or a court official in the exercise of official duties; and (c) unmixed with his own fault. Caldwell v. Barnes, 154 S.W.3d 93, 96

18. McClendon is thus barred by the principles of collateral estoppel from re-litigating the following determinations arising from the State Court Litigation:

   (a) Springfield complied with his fiduciary duty to NIA;

   (b) Springfield did not commit a theft of NIA property;

   (c) McClendon published statements to Allen Van Wey (a third party) in late December 2007 or early January 2008 that Plaintiff had stolen hundreds of thousands of dollars;

   (d) McClendon published a statement to Allen Van Wey (a third party) in late December 2007 or early January 2008 that Plaintiff had "broke into" the NIA building at 4 a.m. to try and "cover his tracks";

   (e) McClendon published a statement to Annette Dahlke, an employee of Golden Rule Insurance Co., on February 15, 2008 that Plaintiff had stolen money and he asked Ms. Dahlke what he could do to prevent Plaintiff's potential appointment as an agent with Golden Rule;

   (f) McClendon published a statement to Daniel Khamir on or about April 23, 2008 that Plaintiff was a thief who stole $100,000 from him and broke into his building;

   (g) McClendon published statements in a letter dated July 16, 2009 that Plaintiff engaged in wrongful conduct and that McClendon was "devastated and completely shocked that a long-time trusted employee would and could have treated our company so callously all for his own benefit";

   (h) McClendon published statements to James Bennett after December 2007 that Plaintiff stole over a million dollars from NIA;

   (i) McClendon published a statement to the staff at NIA that Plaintiff stole over one million dollars from NIA;

   (j) McClendon published statements to representatives of Frost Bank that

---

(Tex.2004). However, the mere filing of a bill of review "does not affect the finality of the judgment which is sought to be set aside," *Schwartz v. Jefferson*, 520 S.W.2d 881, 889 (Tex. 1975), and thus cannot thwart the preclusive effect of findings supporting that final judgment.

          Plaintiff engaged in inappropriate behavior, including stealing $400,000;

(k)     the publication of those statements regarding Springfield by McClendon were "defamatory per se;"

(l)     the publication of those statements regarding Springfield by McClendon were "made in good faith; concerned a subject matter that was of sufficient interest to Larry McClendon or was in reference to a duty owed by McClendon; and were communicated to another party having a corresponding interest or duty;"

(m)     by clear and convincing evidence, McClendon knew that a majority of his statements regarding Springfield were false or that he made the statements "with a high degree of awareness that [the statements were] probably false, to an extent that Larry McClendon in fact had serious doubts as to the truth of the statement[s];"

(n)     Springfield is entitled to recover from McClendon actual damages in the amount of $341,000.00; and

(o)     McClendon's indebtedness to Springfield included pre-judgment interest at the rate of 5% per annum from January 23, 2008 through November 10, 2011.

*Defamation Under Texas Law*

19.     "Defamation is a false statement about a person, published to a third party, without legal excuse, which damages the person's reputation." *Fiber Systems Intern., Inc. v. Roehrs*, 470 F.3d 1150, 1161 (5th Cir. 2006) (*citing Moore v. Waldrop*, 166 S.W.3d 380, 384 (Tex.App.—Waco 2005, no pet.)).

20.     For a private plaintiff (instead of a public official or public figure) to prevail on a defamation claim under Texas law, that plaintiff must prove that a defendant: (1) published a statement, (2) that was defamatory concerning the plaintiff, (3) with negligence regarding the truth of the statement. *Bell v. Bennett*, 2012 WL 858603, at * 8 (Tex. App. – Fort Worth, Mar. 15, 2012, no pet.) (citing *WFAA–TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex.1998), cert. denied, 526 U.S. 1051 (1999)).

21.     Thus, liability for defamation may attach under Texas law arising from "a negligent or intentional act that communicates defamatory matter to a person other

-11-

than the person defamed." *Collins v. Sunrise Senior Living Management, Inc.,* 2012 WL 1067953, at *16 (Tex. App.– Houston [1st Dist.], Mar. 29, 2012, no pet.) (citing *Baubles & Beads v. Louis Vuitton, S.A.,* 766 S.W.2d 377, 380 (Tex. App.– Texarkana 1989, no writ)).

22. A false oral statement is defamatory per se when it falls within one within one of four categories: (1) imputation of a crime, (2) imputation of a loathsome disease, (3) injury to a person's office, business, profession, or calling, and (4) imputation of sexual misconduct. *Downing v. Burns,* 348 S.W.3d 415, 424 (Tex. App.– Houston [14th Dist.] 2011, no pet.); *Gray v. HEB Food Store No. 4*, 941 S.W.2d 327, 329 (Tex. App.— Corpus Christi 1997, writ denied).

23. "Our law presumes that statements that are defamatory per se injure the victim's reputation and entitle him to recover general damages, including damages for loss of reputation and mental anguish. This means that a defendant is liable to a plaintiff for statements that are defamatory per se even in the absence of any evidence of harm." *Miranda v. Byles,* 390 S.W.3d 543 (Tex. App.– Houston [1st Dist.] 2012, pet. filed) (citing *Bentley v. Bunton*, 94 S.W.3d 561, 604 (Tex. 2002)).

24. Notwithstanding the defamatory nature of a statement, an employer has a conditional or qualified privilege that attaches to communications made in the course of an investigation following a report of employee wrongdoing. *Frakes v. Crete Carrier Corp.*, 579 F.3d 426, 430 (5th Cir. 2009) ["Under Texas law, a qualified privilege extends to any communication by an employer about an employee made to a person having a corresponding interest or duty in the subject matter of the communication."].

25. "Generally, this qualified privilege acts as a complete defense to a claim of defamation unless the employer's statement is made with 'actual malice' or the privilege is abused." *Id; see also, Dixon v. Southwestern Bell Tel. Co.,* 607 S.W.2d 240, 242 (Tex.1980).

26. "That is, the law generally presumes good faith and want of malice when a statement is made under circumstances giving rise to a qualified privilege." *Central American Aviation Services, S.A. v. Bell Helicopter Textron, Inc.,* 2007 WL 614132, at *5-6 (Tex. App.– Fort Worth, Mar. 1, 2007, no pet.) *(citing Free v. Am. Home Assur. Co.,* 902 S.W.2d 51, 55 (Tex. App.– Houston [1st Dist.] 1995, no writ).

27. "Proof that a statement was motivated by actual malice existing at the time of publication defeats the privilege." *Randall's Food Mkts., Inc. v. Johnson*, 891

S.W.2d 640, 646 (Tex. 1995); *McIntosh v. Partridge*, 540 F.3d 315, 326 n.16 (5th Cir. 2008).

28. "Malice sufficient to overcome a qualified privilege in a defamation action requires a showing that the defendant acted with knowledge or in reckless disregard of the falsity of the publicized matter, that is, that it entertained serious doubts about the truth of the statement." *Bell Helicopter,* 2007 WL 614132, at *5-6; *see also, Frakes*, 579 F.3d at 431 (quoting *Randall's Food Mkts.,* 891 S.W.2d at 646) ["Under Texas law, a statement is made with actual malice when the statement is made with knowledge of its falsity or with reckless disregard as to its truth."].

29. "Knowledge of falsehood is a relatively clear standard; reckless disregard is much less so. Reckless disregard, according to the [United States] Supreme Court, is a subjective standard that focus[es] on the conduct and state of mind of the defendant. It requires more than a departure from reasonably prudent conduct. Mere negligence is not enough. There must be evidence that the defendant in fact entertained serious doubts as to the truth of his publication, evidence that the defendant actually had a high degree of awareness of ... [the] probable falsity of his statements." *Bentley*, 94 S.W.3d at 591 (internal citations and quotations omitted); *Mendez v. Kavanaugh,* 2012 WL 3594283, at *3 (Tex. App.– Corpus Christi, Aug. 21, 2012, no pet.).

30. Such actual malice must be established by clear and convincing evidence. *Forbes Inc. v. Granada Biosciences, Inc*., 124 S.W.3d 167, 172 (Tex. 2003).

31. The jury finding that the McClendon statements to the designated third parties regarding Springfield were made with actual malice defeated any qualified privilege otherwise existing under Texas law.

*Nondischargeability Under §523(a)(6): Debt Arising from Willful and Malicious Injury*

32. Springfield contends that the debt owed to him should be excepted from discharge as a debt arising from a willful and malicious injury inflicted upon him by McClendon.

33. Section 523(a)(6) of the Bankruptcy Code provides that:

   (a) A discharge under Section 727 . . . of this title does not discharge an individual debtor from any debt . . .

   (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

34. In *Kawaauhau v. Geiger*, 523 U.S. 57 (1998), the United States Supreme Court significantly narrowed the scope of debts that could be deemed non-dischargeable under §523(a)(6).

35. The *Geiger* decision clearly requires that an actor inflict a deliberate or intentional injury, not merely that an actor take a deliberate or intentional act that leads to injury.

36. As subsequently interpreted by the Fifth Circuit, a recovery under §523(a)(6) for a "willful and malicious injury" now requires proof that such injury arose from a deliberate and intentional act by a debtor that was inflicted under circumstances evidencing either:

   (1) an objective substantial certainty of harm; or
   (2) a subjective motive to cause harm.

   *Miller v. J. D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 606 (5th Cir. 1998), *cert. denied, Miller v. J.D. Abrams, Inc.*, 526 U.S. 1016 (1999); *see also Caton v. Trudeau (In re Caton),* 157 F.3d 1026, 1029 (5th Cir. 1998).

37. The "objective substantial certainty" prong "is a recognition of the evidentiary reality that defendants rarely admit malicious intent. A court is thus expected to analyze whether the defendant's's actions, which from a reasonable person's standpoint were substantially certain to cause harm, are such that the court ought to infer that the debtor's subjective intent was to inflict a willful and malicious injury on the plaintiff." *Mann Bracken, LLP v. Powers (In re Powers)*, 421 B.R. 326, 334-35 (Bankr. W.D. Tex. 2009), *citing In re Vollbracht*, 276 Fed. Appx. 360 (5th Cir. 2007).

38. Indeed, "it is clear that reckless disregard of one's duties is not enough for a debt to be deemed non-dischargeable pursuant to § 523(a)(6)." *Id* at 335*; see also*, *Hanson v. Kelly (In re Kelly),* 385 B.R. 877, 885 (Bankr. S.D. Tex. 2008) ["reckless disregard" standard is not proper grounds to hold conduct "willful and malicious"]; *Baker v Sharpe (In re Sharpe)*, 351 B.R. 409, 428-29 (Bankr. N.D. Tex. 2006) ["reckless disregard is not enough for a debt arising from injury to another to be nondischargeable."].

39. Specifically, the Fifth Circuit has previously concluded that a plaintiff's reliance upon a verdict that *could* have been supported by a finding that the defendant acted with reckless disregard for the consequences of her act, would place those actions outside the scope of § 523(a)(6). *Suggs v. Stanley (In re Stanley)*, 224 Fed. Appx. 343, 348 (5th Cir. 2007); *see also Wheeler v. Laudani,* 783 F.2d 610, 615 (6th Cir. 1986) ["Mere reckless disregard for the truth or falsity of [a] statement, which can support a defamation verdict, is not a willful and malicious injury for purposes of § 523(a)(6)."].

40. The jury's verdict that McClendon acted with "actual malice" may be legitimately construed, under the legal definitions provided by Texas law, that he acted with reckless disregard regarding the truth of his statements rather than publishing the statements with knowledge of their falsity.

41. Therefore, Springfield may not rely solely upon the finding of "actual malice" by the jury to establish that McClendon subjectively intended to injure him or that there was an objective substantial certainty of harm arising from McClendon's conduct.

42. However, the pernicious nature of a false statement to a third party accusing another person of a crime creates an objective substantial certainty of harm to that person in the absence of some extenuating circumstance.

43. Under the circumstances presented in this case, the false statements made by McClendon to the designated third parties regarding Springfield created an objective substantial certainty of harm to Springfield.

44. The false statements made by McClendon to the designated third parties regarding Springfield injured Springfield in an amount at least equivalent to the judgment amount.

45. Due to his false statements to the designated third parties regarding Springfield, made under circumstances demonstrating an objective substantial certainty of harm, McClendon inflicted a willful and malicious injury upon Springfield.

46. Thus, the judgment debt of $341,000.00, plus the awarded pre-judgment and post-judgment interest, is therefore excepted from discharge as a debt for a willful and malicious injury to another entity or to the property of another entity pursuant to 11 U.S.C. §523(a)(6).

47. Accordingly, judgment must be rendered for Springfield in this action.

48. To the extent any of these conclusions of law constitute findings of fact, the Court expressly adopts them as such.

49. An appropriate judgment shall be entered consistent with these findings and conclusions.

Signed on 03/21/2013

/s/ Bill Parker
THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE

NOT FOR PUBLICATION